MATTHEW A. GAMBLE *et al.*, Surviving Partners of GAMBLE, WHITE & CO., *et al.*,

*vs.*

JOHN A. HARRIS *et al.*

New Castle, March T. 1884.

*Conveyances in fraud of creditors; principles applicable to determination of question.*

In determining questions of fraudulent conveyance, the following principles apply:

(*a*) Where there has been a sale for value, it must not only be shown that the debtor contemplated a fraud against his creditors, but that the purchaser was privy to it.

(*b*) It is not sufficient to show that the purchaser knew that the grantor was in debt, but there must appear enough to fix him with notice of the covinous design of the seller.

(*c*) A *bona fide* purchaser who pays his money, or gives a valuable and reasonable consideration, stands in a better position than a general creditor.

(*d*) While the conveyance of the whole of a debtor's property may assist in reaching a conclusion that there was a fraudulent intent on his part to hinder or defeat his creditors, yet that is by no means potential. It is valuable as an auxiliary, but of itself not proof.

(*e*) A conveyance *pendente lite* is not for that reason invalid, if the consideration was adequate.

(*f*) An antecedent debt forms a valuable and sufficient consideration; and a debtor has the right, by payment or transfer of property, to prefer one creditor to another, although in so doing he exhausts his entire means.

(*g*) Though a conveyance founded upon a meritorious considera-tion (as blood relationship) will not be sufficient as against creditors, yet there is nothing which prevents a debtor from selling to a rela-tive; and any valuable consideration which would have been sufficient to support a deed to a stranger will equally answer to sustain one made to a relative, in the absence of proof impeaching the transac-tion.

(*h*) In determining the question of the existence of fraud in a con-veyance to defeat or hinder creditors, the facts and circumstances at the time of the conveyance are to be considered; for there must then have existed the intention to defraud.

CREDITORS' BILL.—The facts and the questions presented are fully stated in the opinion.

*Anthony Higgins* for the complainants.

*Benjamin Nields* for the defendants.

THE CHANCELLOR.—This suit was instituted by a bill filed by Matthew A. Gamble and James A. Williamson, surviving partners of Gamble, White & Co.; James H. Rowland, trading as James H. Rowland & Co.; Freeborn E. Smith, Samuel W. McCaulley, and George W. Bush and Walker D. Bush, trading as George W. Bush & Son; against John A. Harris and Althea F. Harris, his wife, Eliza Harris, Mary Harris and Wilbur W. Harris,—to set aside certain deeds made by the said John A. Harris and wife to the other defendants, as having been made in fraud of creditors.

After reciting the several conveyances, the bill sets forth that the debts of the complainants had been incurred by John

A. Harris, and were outstanding and unpaid at the dates of the first two of these said conveyances,— viz.: November 19, 1874, and December 7, 1874; that all of the conveyances, except the first two were made after knowledge by the said John A. Harris and wife that suits had been or were about to be brought by the creditors, the complainants, to enforce the collection of these said claims; and that these conveyances were made by Harris to prevent the judgments to be obtained in such claims from becoming liens on the said real estate.

It further avers that all the conveyances were executed for the fraudulent purpose of defeating the collection of these debts due to the complainants, and that the several grantees in said conveyances, defendants in this suit, had knowledge of the fraudulent purposes of the grantors before and at the times when the said several conveyances were executed; and, further, that the said conveyances were without good and valuable consideration, either at law or in equity, but were made with intentional fraud, for the purpose of preventing the complainants from enforcing the judgments to be obtained against John A. Harris; and that if the said conveyances are allowed to stand, the complainants will have no means of enforcing the collection of their respective debts, as the personal property of the said John A. Harris had been previously exhausted by executions at the suit of creditors not parties to this cause.

The complainants, in their bill, set out the several claims, to defeat the collection of which they allege that the several conveyances were made, as follows:

1. A judgment at the suit of Gamble, White & Co. *v.* John A. Harris, recovered at the November Term of the Superior Court in New Castle County, for the sum of $440.37, with interest from November 29, 1875.

2. A judgment at the suit of James H. Rowland & Co. *v.* John A. Harris, recovered at the May Term of said court, for the sum of $801.26, with interest from May 22, 1876.

3. A judgment at the suit of Freeborn E. Smith *v.* John A. Harris, recovered at the May Term of said court, for the sum of $609.42, with interest from May 22, 1876.

4. A judgment at the suit of Samuel W. McCaulley *v.* John A. Harris, recovered at the May Term, 1876, of said court, for the sum of $647.70, with interest from May 31, 1876.

5. A judgment at the suit of George W. Bush & Son *v.* John A. Harris, recovered before John K. Puhl, a justice of the peace in Wilmington, on April 8, 1876, for the sum of $80.39, with interest from April 8, 1876, and a transcript of which judgment was on the same day entered in the Superior Court in and for New Castle County.

To this bill the several defendants respectively put in answers, in which all charges of fraud as alleged in the bill are expressly and absolutely denied ; but as the several answers are somewhat different in the statements of the purposes for which the conveyances therein admitted were made, it is proper to refer more particularly to the contents of each answer.

Wilbur W. Harris admits that the lands stated in the bill to have been conveyed to him by John A. Harris and wife, and mentioned in item 9 thereof, were so conveyed on or about the time stated in the bill, and which time mentioned in the bill was December 7, 1874 ; that the said lands, when so conveyed, were subject to two mortgages,—one held by Eli Nichols for the sum of $5,000, and the other by Edward Bellah for $1,000 ; that John A. Harris and wife conveyed the land to his son, the said Wilbur W., in order that he might sell the same for the best price that could be obtained, and, after payment of the special liens above named, to apply the balance of the purchase money to the payment of the debts of the said Wilbur; and among these debts were those of Gamble, White & Co., and that of J. H. Rowland & Co., above mentioned, and for which he states that John A. Harris, his father, was liable as indorser. He further states, in his answer, that he was unable to sell the lands for more than the mortgages and the accrued interest thereon, and that on the 8th day of May, 1876, he conveyed the said property to Eli Nichols.

Eliza Harris and Mary Harris, the other grantees, admit the conveyance to them of that estate mentioned in item 8 of the bill, subject to a mortgage for $9,000, made by John A. Harris and wife to Margaret I. Richardson, and also subject to interest unpaid and to taxes, amounting at the time of the conveyance to $575 ; and that the consideration given by them was partly in cash, but mainly in other property in the discharge of debts due them from John A. Harris, to the amount of $11,595,—thus making the property stand them in the sum of $21,170 at the time of the conveyance, which was November 19, 1874.

It is further admitted, in said answer, that the property mentioned in paragraph 10 of the bill was conveyed to Eliza Harris, one of the defendants, by John A. Harris and wife on the 14th of October, 1875, the time set forth in the bill, subject to a purchase-money mortgage made by John A. Harris and wife to William McCaulley for $10,000; and that at the time of the conveyance. the said property was also subject to taxes to the amount of $230 ; and states the further consideration paid by her to be a sum of money to the amount of $50, at the time of the execution of the deed, and the discharge of indebtedness owed by the said John A. Harris to her of $13,488,— thus making the property at the time of the conveyance stand the said Eliza Harris in the sum of $23,718.

It is further admitted, in the said answer, that the property mentioned in paragraph 11 was conveyed to Eliza Harris by John A. Harris and wife on the 14th of October, 1875,— the time alleged in the bill,—subject to unpaid taxes to the amount of $826.25, for the actual consideration of $11,606.85, of which there was paid in cash the sum of $5,860, and the residue in payment of debts due to grantee from the said John A. Harris,—thus making the property stand to Eliza Harris at the time of the conveyance in the sum of $12,413.10.

The answer further admits that the property described in paragraph 12 of the bill was conveyed to Eliza Harris by John A. Harris and wife on the 16th of October,—the time mentioned in the bill,—subject to two mortgages made by John

A. Harris and wife; one to William McCaulley for $4,000, and the other to the Delaware Loan Association for $1,650, and on which there was interest and taxes to the amount of $148, for the consideration actually paid in cash of $1,600,—thus making the whole consideration in the hands of Eliza Harris $7,398.

It is also admitted that the property mentioned in paragraph 13 of said bill was conveyed to Eliza Harris and Mary Harris by John A. Harris and wife on the 9th of November, 1875, and that the consideration actually paid therefor was the sum of $104.44; of which the sum of $53.30 was in payment of a debt, and the residue—$51.14—was in cash at the time of the execution thereof.

It further appears that all the deeds thus executed were duly recorded,—some at or near the date of execution, all within the time prescribed by law.

It is further stated, in the answer of Eliza Harris and Mary Harris, that it was agreed by them that, being sureties of the said John A. Harris upon his administration bond, they would assume and pay his liability as such administrator; and while there is no evidence of any such liability further than a decree of the orphans' court correcting his accounts, the answer of these defendants amounts not only to an acknowledgment which would bar them from recovery of their shares, but would preclude them from the benefit of any claim on their part for reimbursement of any amount which they would be required to pay as sureties. Any such amount is therefore properly entitled to be added to their consideration for the lands.

Inasmuch as this bill was filed to avoid these conveyances, on the ground that they were respectively executed in fraud of creditors, it becomes material to ascertain the amount of the debts owing by John A. Harris to the several creditors, complainants, and the foundation of the liability. The first in point of time seems to be that of Gamble, White & Co., so far, at least, as is evident by the copies of the notes filed with the affidavits.

The first note was dated September 7, 1874. It was the note of Lester A. Harris & Bro. for $414.22, payable to Gamble, White & Co. at three months, and signed on the back by John A. Harris,—whether as joint maker, indorser, or guarantor being a mixed question of law and fact. The firm of Lester A. Harris & Bro. was composed of Lester A. and Wilbur W. Harris, sons of John A. Harris.

The second note was that of John A. Harris to Freeborn E. Smith, dated January 1, 1875, for $570, payable at seven months.

The third liability was a check given by John A. Harris to William Hemphill Jones for $600, dated February 2, 1875, and payable immediately, and by the said Jones transferred by indorsement to the complainant Samuel W. McCaulley.

The fourth liability was on a promissory note made by Lester A. Harris & Bro. to Davis & Way, for the sum of $744.80, dated March 10, 1875, payable at six months, and indorsed first by Davis & Way and subsequently by John A. Harris; after which it came into the possession of J. H. Rowland & Co., one of the complainants. From facts appearing among the exhibits and in the answer of Wilbur W. Harris, it seems that this note was a renewal of one previously existing, the date of which does not appear; nor does it appear when the original liability was contracted.

The fifth and only other debt was due to George W. Bush & Son, also complainants, who recovered judgment April 8, 1876, before a justice of the peace, against John A. Harris for $80.39; which judgment was transferred to the Supreme Court in New Castle County.

As there are no other creditors complaining, and no other indebtedness suggested by the bill, I am warranted in assuming these were the only creditors except the mortgagees,—who seem to have been secured,—and the sisters, whose debts, according to the answers, were paid by the other conveyances complained of.

The total liabilities thus shown by the bill, for which the deeds are sought to be avoided, amounted to the sum of

$2,579.14, contracted at various times and with varying degrees of responsibility.

Having made this summary, we are better enabled to apply to the bill settled principles of law,—the facts appearing in each case,—and in doing so it becomes important to consider the dates of the several conveyances and to distinguish between them, whether as voluntary, or based upon adequate consideration.

Let us first examine the conveyance made by John A. Harris and wife to Wilbur W. Harris. This deed bears date December 7, 1874, and was recorded on the 15th of the same month. It conveyed to Wilbur W. Harris, for the nominal consideration of $16,000, as stated in the deed, a parcel of land, subject to two mortgages,—one for $5,000 held by Eli Nichols, and the other for $1,000 by Edward Bellah. It is admitted by the defendant Wilbur W. Harris, in his answer, that he paid no consideration to his father for the land, but that it was conveyed to enable him to pay the debts of the firm of Lester A. Harris & Bro., for which John A. Harris had by indorsement made himself liable.

Now, it is manifest that of the debts named, and for which this conveyance is sought to be avoided, there were but two in existence at the time of the making of this deed,—viz.: those of Gamble, White & Co. and J. H. Rowland,—and both of which were in notes made by Lester A. Harris & Bro., and on which John A. Harris was only secondarily liable, if indorser or guarantor, and on one of which there was another party, Davis & Way, who, from the face of the paper, was a prior indorser. It seems certain that the consideration for which the notes were given was to the use of Lester A. Harris & Bro.

Now, the first and obvious fact which presents itself is that this conveyance was not made to a stranger, but to one privy to the contracts, and against whom all the liability to the enforcement of payment existed, at the suit of the complaining creditors, that they had against John A. Harris. In fact it was a conveyance to the principal debtor, and, so far as

it went, placed in his hands a fund for the payment of the debt, and which, so far as appears, remained in his hands until the 8th of May, 1876, when, as stated by Wilbur W. Harris in his answer, he conveyed it to Eli Nichols, one of the mortgagees, for the amount of the mortgages, not having been able to realize a larger price for it. There is no testimony directed to proving the value of the land, and I am therefore unable to determine concerning its sufficiency. The only deed attempted to be impeached is that of John A. Harris and wife to Wilbur W. Harris; and considering that the effect of this conveyance was in no manner to withdraw the land from liability to the claims of these creditors who had any debts existing at the time of the conveyance, or any debts in contemplation; and, further, considering the large amount of property still left in the ownership of John A. Harris, I am unable to discover that there was anything in the circumstances of its execution which denoted a purpose, either actual or constructive, to hinder or delay or defraud creditors, even if there were no other consideration present to influence my judgment.

But there is another most material circumstance. On the 8th of May, 1876, after holding the land some sixteen months, Wilbur W. Harris conveyed to Eli Nichols, a purchaser for a valuable consideration, whose good faith is in no wise impeached, and who is not even made a party to the suit. It is therefore manifest that as to this matter there can be but one conclusion, and that as to the defendant Wilbur W. Harris, this bill of the complainants must be dismissed.

I will now consider the case with reference to the several conveyances made by John A. Harris and wife to the defendants Eliza and Mary Harris. Unlike the former, these deeds were made upon valuable consideration, to a certain extent, at least; and the question with regard to them is whether there was present, either actual fraud on the part of the grantees in expressly combining with the grantor to hinder, delay or defeat his creditors, or from the circumstances attending the transaction, in the disproportion between the consideration

actually given or otherwise, there are such *indicia* of a fraudulent purpose as that equity will not suffer the conveyances to stand.

Before proceeding to facts, it will be useful to lay down certain well-established principles which must always be kept in view in determining questions of fraudulent conveyances:

1. That where there has been a sale for value, it must not only be shown that the debtor contemplated a fraud against his creditors, but that the purchaser was privy to it.

2. That it is not sufficient to show that the purchaser knew that the grantor was in debt, but there must appear enough to fix him with notice of the covinous design of the seller.

3. That a *bona fide* purchaser who pays his money, or gives a valuable and reasonable consideration, stands in a better position than a general creditor.

4. That while the conveyance of the whole of debtor's property may assist in reaching a conclusion that there was a fraudulent intent on his part to hinder or defeat his creditors, yet that is by no means potential. It is valuable as an auxiliary, but of itself not proof.

5. That a conveyance *pendente lite* is not for that reason invalid, if the consideration was adequate.

6. That an antecedent debt forms a valuable and sufficient consideration, and that a debtor has the right, by payment or transfer of property, to prefer one creditor to another, although in so doing he exhausts his entire means.

7. That though a conveyance founded upon a meritorious consideration (as blood relationship) will not be sufficient as against creditors, yet there is nothing which prevents a debtor from selling to a relative, whether a son or a sister ; and any valuable consideration which would have been sufficient to support a deed to a stranger will equally answer to sustain one made to a relative, in the absence of proof impeaching the transaction.

8. That in determining the question of the existence of fraud in a conveyance to defeat or hinder creditors, the facts

and circumstances at the time of the conveyance are to be considered ; for there must then have existed the intention to defraud.

In view of these principles—which, indeed, may be called rules for guidance—I approach the facts ; and first I must express my regret that, in the preparation of the papers and proof, neither side has come up to the full measure of that which would seem reasonable to have been adduced as affording the best light for adjudication between conflicting claims of this character.

In the bill of the complainants there is no allegation that John A. Harris had not property sufficient for the payment of these debts, remaining after the last conveyance, and no proof whatsoever furnished as to this fact, other than by the exhibits it appears that the sheriff had levied on the lands conveyed to the sisters; but by the same exhibit it seems that there was in the levy a house on Shiply Street not conveyed by Harris by any of these deeds, and concerning which there is no testimony whatever.

In fact the proof of both parties has been directed only to ascertaining the value of certain parcels, which, so far as the present inquiry is concerned, may be stated as the parcels conveyed by deeds 1, 3, 4 and 5, in the order of time; and by a comparison of this proved value with the consideration as stated in the several deeds, and as stated in the answers to have been in fact paid, to deduce such inferences of fraud or fairness as on the one hand to overthrow and on the other to support the deeds; and both sides seem particularly to have been willing to rest on this issue thus presented.

Nor are the complainants alone in fault in respect to the just degree of fullness which might have been expected. It seems reasonable that, in addition to the explicitness with which the defendants have set out the considerations advanced for the lands, there should have been proof offered to establish the various matters disclosed, especially in regard to such as would seem to have been easy of disclosure ; and, among these, I refer particularly to the sale of the house in Shiply

Street and of the item treated as cash, and designated as " Bal. of sale to Randall."

In this state of the allegations and proofs on both sides, I am left to discover the truth by the best light afforded me.

The precise question to be determined is whether John A. Harris in making, and the defendants Eliza and Mary Harris in accepting, these several conveyances, did, at the time of so doing, intend to hinder, delay or defeat his creditors in fraud of their rights. Now, in the decision of this question, it is material to notice the times of the respective conveyances, the amount of the indebtedness of John A. Harris, and the value of his property,—both that conveyed and that retained,—at the time of each conveyance, as compared with the debts; the proof as to the knowledge of the grantees that John A. Harris was in debt to anyone other than themselves, and the varying testimony of the witnesses as to the value of the lands at the time of the conveyances, for it is manifest that only at that precise time can such value be taken into consideration upon a matter of fraud arising out of inadequacy.

That John A. Harris was indebted to his sisters I have not the least doubt, and that the relinquishment of these debts formed a part of the consideration for the conveyance of these lands I am equally clear ; and while I would have been much better satisfied had the proof on both sides been more full, I do not feel justified in setting aside conveyances which I feel sure were made upon valuable consideration, without more evidence than is presented to me that the grantees had any such knowledge or notice of fraudulent purposes, even if any existed, as would take away from them the protection which equity accords to *bona fide* purchasers for value.

Decree accordingly.