WRIGHT C. DIZER,

*vs.*

JAMES A. WASHINGTON, ELMIRA C. RUNYON, LAURA WASH-
INGTON AND WILLIAM P. FIELDS.

*New Castle, July 25, 1932.*

*John B. Jester,* for complainant.

*Percy Warren Green,* for defendants James A. and Laura Washington.

*Henry R. Isaacs,* for defendant Fields.

THE CHANCELLOR: This case was heard over a year ago. The record and briefs have just recently come to my hands. Notwithstanding the length of time that has intervened since the testimony was taken, I have quite a distinct recollection of the impression the witnesses made upon me when they testified and of the tentative opinion I then formed of how the case should be decided. A re-examination of it has confirmed my original views as to the disposition which should be made of the cause.

The first question is, can the deed to Laura Washington stand against the judgment obtained by the complainant against her husband since the deed's execution and delivery? I think not. Even conceding that Laura Washington had turned over some money to her husband with which to help him buy the land in July of 1928, it is very doubtful if there was any understanding between them at the time that she should have even a lien for the amount she claims to have given her husband, not to say that the title should be hers, though taken in his name. The complainant was a creditor of James A. Washington and was threatening to sue for his debt. Washington begged for indulgence representing that his house and lot, upon which there was a five hundred dollar mortgage, had ample equity in it to protect the complainant. The complainant went out and examined the property and, on the strength of his judgment as to its value, granted Washington the indulgence he requested. For reasons which I shall not detail, the complainant later sued Washington and before he could secure judgment, indeed before the suit was started and during the period of what the complainant appropriately it seems to me described as Washington's "sparring" with him, the title was turned over to Washington's wife without any

consideration passing at the time. Ten dollars was paid to the defendant Runyan, the intermediary through whom the title passed from husband to wife, but this was paid by the husband. He appears to have engineered the affair. Under the principle of *Sisler Co. v. Sterling, et al.,* 14 *Del. Ch.* 163, 123 *A.* 129, I am of the opinion that the complainant is entitled to have the deed to Laura Washington set aside to the extent necessary to satisfy his judgment. I cannot deduce anything from the case of *Gamble v. Harris,* 5 *Del. Ch.* 512, cited by the defendants, in conflict with this view.

The second question in the case concerns the complainant's right to have the mortgage for two thousand dollars held by Fields subordinated to his judgment. Fields claims that the mortgage was given to secure him for the cost of building the house which is on the lot or lots, and also to secure the repayment of seven hundred and fifty dollars he loaned to Washington. He says his total claim was really for a little over two thousand dollars. But he took a mortgage in that sum only. If Fields' testimony be accepted we are to believe that he permitted Washington to get in his debt to the extent of two thousand dollars without a particle of security to protect it, and let it stand in that condition for about a year and a quarter. Considering the character of the debtor as a financial risk, this was a most extraordinarily generous act on Fields' part. It would be more credible if the granting of security to Fields had not synchronized so conveniently with Washington's procrastinating tactics in his dealings with the complainant, by which the complainant was held off from suit. When the complainant got tired of Washington's unfulfilled promises he sued and obtained judgment in June of 1930 and never discovered until September or October of that year that while he had been indulging Washington, the latter had managed to put all of his property out of reach of a legal lien in favor of the complainant. The circumstances are highly suggestive of a plan to defeat the complainant and are such as should be viewed with marked suspicion. I am

compelled to say that the witnesses in their testimony supporting Fields' mortgage did not make a good impression upon me. The complainant testified that he interviewed Fields before the pending bill was filed and asked him how much Washington was in his debt. Fields replied—not over two hundred dollars. I believe the complainant's account of the interview. Believing the complainant's testimony to be true in that regard, and there being nothing in the evidence to overthrow Fields' claim to the extent of two hundred dollars, I conclude that his mortgage should stand as against the complainant only in that amount.

The decree therefore will declare the complainant's judgment to be a lien on the premises, and that the same should be paid by the defendant Laura Washington on a day certain; and in default of such payment that the premises be sold subject to the first mortgage which is not in dispute, the proceeds to be first applied to the extent of two hundred dollars of the principal of Fields' mortgage together with interest on said sum, next to the complainant's judgment, debt, interest and costs due thereon, the balance on Fields' mortgage which so far as the defendant, Laura Washington, is concerned is not under attack, and the remainder, if any, to Laura Washington.

Decree accordingly.